**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| SAMUEL HOKE and LANIESA SHAFER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUNDAY APP, INC.,<br><br>Defendant. | COMPLAINT – CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>CASE NO. |

Plaintiffs Samuel Hoke and Laniesa Shafer ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint ("Complaint") against Defendant Sunday App, Inc. ("Sunday" or "Defendant"), and allege, upon personal knowledge as to themselves and their own actions and experiences, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Sunday, arising from its deceptive and unfairly disclosed junk fee ("Sunday Platform Fee" or the "Fee"). This Fee is typically named the "Sunday Platform Fee" and Sunday assesses the Fee on all transactions processed through Sunday's QR-code payment platform.

2. Sunday App, Inc. is a restaurant payments technology company based in Atlanta, Georgia. [1] Sunday offers a QR-code-based payment tools that allow consumers to quickly pay

---

[1] https://sundayapp.com/en-gb/who-we-are/ (last accessed Jan. 19, 2026)

restaurant checks using their mobile phones, purportedly to streamline business operations and improve customer experience.

3. In reality, however, Sunday monetizes this "convenience" by imposing a mandatory Sunday Platform Fee that is hidden or inadequately disclosed until the end of the checkout process—after consumers have already invested substantial time and committed to using Sunday to complete a payment. Sunday prioritizes hidden revenue over transparency, exploiting consumer trust at each transaction.

4. Specifically, through its QR-code online payment flow, Sunday allows consumers to scan QR codes displayed on receipts, checks, or payment screens using their mobile phones to pay for their bills at restaurants and other businesses without assistance from an employee.

5. Consumers use Sunday expecting a faster and easier checkout experience, as Sunday prominently advertises on its website and app. They do not use Sunday expecting to pay an extra mandatory fee to complete a transaction they are already attempting to pay.[2]

6. Consumers reasonably expect to pay only for what they ordered, as reflected on their receipt, not surprise, last-minute junk fees that provide no additional value and are simply added to increase the total transaction cost.

7. Sunday does not clearly and prominently disclose—before consumers proceed through the payment flow—that Sunday will automatically add an additional "Platform Fee" to the transaction total.

8. However, Sunday surreptitiously adds a Sunday Platform Fee to all transactions completed using the Sunday platform. This fee is not optional, is not tied to any consumer-selected add-on, and is assessed solely because the consumer pays through Sunday which is encouraged

[2] https://sundayapp.com/order-and-pay/(last accessed Jan. 19, 2026)

and even required by many restaurants. This deceptive practice is intentionally designed to catch consumers off guard and extract additional revenue without their informed consent.

9. As discussed in detail herein, the assessment of this Fee is deceptive and unfair because: a) Sunday does not disclose the added Fee until the very last step in the purchasing process; b) the Fee itself is deceptively named and described; and c) the Fee provides no real benefit to customers, and instead, is a way for Sunday to increase its profits, and pass off its operational costs to the consumer.

10. By this conduct, Sunday has engineered a "pay junk fees to play" scheme. Consumers cannot use the Sunday app/payment platforms to pay for their orders unless they pay the junk fee unilaterally set by Defendant, despite the fact that they have zero relationship to any extraneous services actually being provided.

11. This coercive setup turns convenience into a trap, forcing consumers to pay more for no added value.

12. Throughout the entirety of the payment process, Sunday displays a total price for the consumers' transactions, accompanied by the costs of individual products showing up as line items, in a manner that implies the displayed total reflects what the consumer will actually pay--*without the inclusion of any additional Sunday Platform Fee*. Reasonable consumers like Plaintiffs proceed through check out without ever becoming aware of any additional fee assessed by Defendant.

13. Sunday misrepresents the nature of the Sunday Platform Fee assessed on its payment platforms, by making representations that fail to correct reasonable understandings of the total costs of consumers' orders.

14. Sunday omits and conceals material facts about the Sunday Platform Fee, never once informing consumers in any disclosure, at any time, of the true nature of this Fee. Sunday also fails to disclose, before checkout, that the Fee is mandatory and will be automatically added to the bill total.

15. Sunday's misrepresentations and omissions are material to consumers. Sunday deceives consumers into using its platform to pay for their orders under the guise of convenience, causing them to pay Sunday an undisclosed mandatory Sunday Platform Fee, and has caused them to suffer monetary injury by paying more for items than they otherwise would have if they had been truthfully informed of the Fee before initiating payment through Sunday.

16. The economic harm is compounded because many consumers only discover the fee after completing their transaction, leaving them with no practical recourse.

17. By failing to clearly and prominently disclose the truth to consumers about the real price of using the Sunday platform, Sunday deceives consumers and gains an unfair upper hand on competitors that fairly disclose their pricing and fees.

18. Sunday subjects its customers to a "Sunday Platform Fee" on each order paid for through its platform. While Sunday cryptically describes the fee as a "platform fee", the fee is nothing more than an additional mandatory charge foisted on consumers—many of whom are unaware that an additional charge is being added to their payment total.

19. It is false and deceptive for Defendant to surreptitiously add the Sunday Platform Fee at the end of the payment process, especially where it offers no explanation of this Sunday Platform Fee at any time during the checkout process. The Sunday Platform Fee is added without comment or description as inconspicuous line items, just before a transaction is completed, after a multi-step payment process without any mention of this additional Fee.

20. By hiding the misnamed and deceptive Fee until the very last step of the transaction, Defendant has raked in millions of dollars at the expense of consumers stuck with no other choice.

21. As a result of Defendant's unfair and deceptive conduct, Plaintiffs and the proposed class have suffered damages.

22. Plaintiffs bring their claims individually and on behalf of all similarly situated Sunday customers and seek monetary damages and an injunction to require Sunday to disclose the truth to consumers about its pricing practices.

## PARTIES

23. Plaintiff Samuel Hoke is a citizen and resident of California at all relevant times and used Sunday to pay for his restaurant tab during the Class Period.

24. Plaintiff Laniesa Shafer is a citizen and resident of Illinois at all relevant times and used Sunday to pay for her restaurant tab during the Class Period.

25. Defendant Sunday App, Inc. is a restaurant payments company based in Atlanta, Georgia.[3] Sunday offers QR-code-based payment tools that allow consumers to pay restaurant checks using their mobile phones.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction of this action under the Class Action Fairness Act of 2005 because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000; (2) the proposed Classes are comprised of at least 100 Class members; and (3) at least one of the proposed Class members is a citizen of a different state than Defendant, namely Plaintiffs, citizens of California and Illinois. *See* 28 U.S.C. § 1332(d).

[3] https://sundayapp.com/en-gb/who-we-are/ (last accessed Jan. 19, 2026)

27. This Court has personal jurisdiction over Defendant because Defendant conducts substantial business in Georgia and is organized under the laws of the State of Georgia with its corporate office located in Atlanta, Georgia.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the conduct giving rise to the claims asserted herein occurred in this District.

## FACTUAL ALLEGATIONS

### Sunday's "Platform Fee" is an Unlawful Junk Fee Designed to Maximize Profits.

29. Sunday's failure to clearly and prominently disclose its Sunday Platform Fee is deceptive, unfair, and misleading to consumers, who are led to believe they are paying the same price using the Sunday platform as they would had they paid the restaurant in-person directly.

30. In reality, Sunday is sneaking in a Sunday Platform Fee in varying amounts (often tied to the consumer's subtotal) on all orders, causing consumers to overpay for their purchases. The variability of this fee underscores its arbitrariness and confirms that the Fee is not a fixed charge tethered to any legitimate, unavoidable cost of processing a transaction.

31. Although the Fee is mandatory for consumers using the Sunday platform, no portion of the Fee constitutes any legitimate, government-imposed tax or fee, nor is it gratuity paid to restaurant staff.

32. Sunday surreptitiously adds the Sunday Platform Fee to all orders by sneaking the Fee in at the end of the transaction—only after all other information has been inputted by the customer and they are ready to complete payment. The timing and placement of this Fee obscure the true total cost of payment through Sunday and prevent consumers from recognizing it as part of the purchase price until the last moment.

33. Accordingly, many consumers do not notice that an additional fee is being added to their order. Consumers who do notice the previously undisclosed Sunday Platform Fee often decide to go through with their purchase anyway, as they have already invested substantial time and effort into using Sunday's platform—scanning the QR code, navigating Sunday's multi-step payment flow, and inputting their payment and identifying information into Sunday's system. This is a classic form of digital "drip pricing" that exploits consumer inertia and effectively deprives consumers of meaningful choice.

34. Even in the receipt Sunday sends to consumers after their purchase, Sunday strategically places the Sunday Platform Fee as a line item *after* the items, subtotal, taxes, and other charges, making the Fee easy to miss and minimizing its perceived impact.

35. Sunday does not explain elsewhere on its website, or during the purchasing process, how its Sunday Platform Fee is calculated or how it contributes to Sunday's operating of the platform.

36. Furthermore, there is also no explanation of the Fee on the receipts sent to consumers following their purchases, including no definition of what the Platform Fee means, how it is determined, or why it is mandatory.

37. On information and belief, Sunday's Sunday Platform Fee is nothing more than an additional junk fee designed to increase Sunday's profits without providing customers any additional value. That the "Sunday Platform Fee" does not actually fund Sunday's operating costs is made clear by the fact that the Fee is not a set amount or percentage, but instead varies based on the total cost of the bill—demonstrating that the Fee is not tied to any unavoidable operational or platform costs and is instead a discretionary fee imposed to inflate revenue.

38. This artificial surcharge represents a deliberate and unlawful profit-maximization scheme at the expense of unsuspecting consumers.

39. Because it provides no value to consumers, Sunday's Sunday Platform Fee is nothing more than a classic hidden "junk fee." Such fees have come under government scrutiny in recent years. As the White House explains:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, Mar. 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/.

40. As the Federal Trade Commission said recently regarding its effort to combat junk fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

41. Covertly added fees like Sunday's Sunday Platform Fee are also unfair, deceptive, and misleading to consumers because they obstruct consumers' ability to accurately compare the cost of Defendant's application with other payment options offered by restaurants. These fees

distort the competitive marketplace by preventing consumers from understanding the true cost of a transaction until the very end.

42. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that, when advertising and selling are combined on a website, and the consumer will be completing the transaction online, all material disclosures should be provided *before* the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising* at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

43. Sunday's failure to clearly and conspicuously disclose the true nature and purpose of its Sunday Platform Fee violates these federal principles and unfairly obscures the true cost of using the platform. Sunday's conduct is deceptive under various state consumer protection law and contradicts the federal regulatory guidance designed to protect consumers from precisely this type of hidden-fee and drip-pricing deception.

## **PLAINTIFFS' EXPERIENCES**

***Plaintiff Hoke***

44. By way of example, on or about December 12, 2025, Plaintiff Hoke paid for a food order using Sunday's payment platform at a restaurant in Los Angeles, California. The order totaled approximately $184.00 before taxes and fees.

45. Prior to completing his purchase, Sunday's representations led Plaintiff Hoke to believe he would only be paying for the cost of his food items, plus any government-mandated charges (such as sale tax).

46. However, after Plaintiff Hoke had proceeded through Sunday's multi-step payment process, Sunday assessed a hidden Sunday Platform Fee that had not been clearly and conspicuously disclosed earlier in the payment flow.

47. Sunday charged Plaintiff Hoke a total price for his food items (and applicable tax) that was higher than the amount reflected on his in-store receipt, by adding a mandatory Sunday Platform Fee, increasing the total cost of his order by $4.99.

48. Plaintiff Hoke would not have completed the purchase using Sunday's payment platform had he known he would be assessed a Sunday Platform Fee costing an extra $4.99.

49. If he had known the true costs of the order including the mandatory Fee, he would have chosen another method for paying for his order to avoid the Fee.

***Plaintiff Shafer***

50. By way of example, on or about December 6, 2025, Plaintiff Shafer paid for a food order using Sunday's payment platform at a restaurant in Chicago, Illinois. The order totaled approximately $39.95 before taxes and fees.

51. Prior to completing her purchase, Sunday's representations led Plaintiff Shafer to believe she would only be paying for the cost of her food items, plus any government-mandated charges (such as sales tax).

52. However, after Plaintiff Shafer had proceeded through Sunday's multi-step payment process, Sunday assessed a hidden Sunday Platform Fee that had not been clearly and conspicuously disclosed earlier in the payment flow.

53. On its app, Sunday charged Plaintiff Shafer a total price for her food items (and applicable tax) that was materially higher than the amount reflected on her in-store receipt, by adding a mandatory Sunday Platform Fee, increasing the total cost of her order by $.69.

54. Plaintiff Shafer would not have completed the purchase using Sunday's payment platform had she known she would be assessed a Sunday Platform Fee costing an extra $.69.

55. If she had known the true costs of the order including the mandatory Fee, she would have chosen another method for paying for her order to avoid this fee.

## CLASS ALLEGATIONS

56. Plaintiffs bring this action individually and on behalf of the following proposed Classes:

> **Nationwide Class:** All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification paid a "Sunday Platform Fee" when making a purchase through the Sunday platform.
>
> **California Subclass:** All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, while residing in California paid a "Sunday Platform Fee" when making a purchase through the Sunday platform.
>
> **Illinois Subclass:** All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, while residing in Illinois paid a "Sunday Platform Fee" when making a purchase through the Sunday platform.

57. Excluded from the Classes are Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

58. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Defendant has acted on

grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

a. Whether, during the class period, Defendant assessed the Sunday Platform Fee to all orders without clearly informing consumers;

b. Whether Defendant's conduct misled or had a tendency to mislead consumers;

c. Whether Defendant's conduct constitutes violations of the laws asserted;

d. Whether Plaintiffs and members of the Classes were harmed by Defendant's conduct as alleged herein;

e. Whether Plaintiffs and the Classes have been damaged, and if so, the proper measure of damages; and

f. Whether an injunction is necessary to prevent Defendant from continuing its deceptive conduct.

59. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiffs.

60. It is impracticable to bring Class members' individual claims before the Court. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including

providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

61. Plaintiffs' claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Defendant, as described herein.

62. Plaintiffs are adequate representatives of the Classes because they are Defendant's customers and have suffered damages as a result of Defendant's misrepresentations. In addition:

a) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of consumer class actions;

b) There is no conflict of interest between Plaintiffs and the unnamed members of the Classes;

c) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d) Plaintiffs' legal counsel have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

63. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

64. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate corresponding declaratory relief with respect to the Classes as a whole.

65. All conditions precedent to bringing this action have been satisfied and/or waived.

66. A class action is superior to other methods for resolving this controversy. Because the amount of restitution, damages, and/or penalties to which Class members may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for Class members to redress the wrongs done to them without a class action. Furthermore, on information and belief, many Class Members do not know that their legal rights have been violated. Class certification would also conserve judicial resources and void the possibility of inconsistent judgments.

## CAUSES OF ACTION

### COUNT I
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act, § 815 ILCS 505, *et seq.*
### *(*On Behalf of Plaintiff Shafer and the Illinois Subclass*)*

67. Plaintiff Shafer restates each of the allegations in the preceding paragraphs 1 through 66 as if fully set forth herein.

68. Plaintiff Shafer brings this claim against Defendant under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*, on behalf of herself and the Illinois Subclass.

69. In construing 815 ILCS§ 505/2, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

70. Sunday App, Inc. is a "person" as defined by 815 ILCS § 505/1(c).

71. Plaintiff Shafer, as well as each member of the Illinois Subclasses, is a "person" as defined by 815 ILCS § 505/1(c) as well as actual or potential "consumer" of the products and services offered by Defendant, or are successors in interest to actual persons or consumers as defined by 815 ILCS § 505/1.

72. The circumstances that relate to the transactions giving rise to this claim occurred primarily and substantially in Illinois because Defendant caused to be disseminated throughout the state of Illinois through advertising, marketing, and other publications, statements that were deceptive and misleading, and which it knew were untrue and misleading.

73. Defendant's course of conduct involved trade or commerce, as its actions were taken in the course of its business in Illinois.

74. Sunday's conduct as alleged herein constitutes unfair and deceptive acts and practices in violation of ICFA, including but not limited to the following: (a) failing to clearly and conspicuously disclose that Sunday would impose an additional mandatory "Platform Fee" on transactions processed through Sunday's payment platform; (b) concealing, suppressing, and omitting material facts regarding the existence, nature and purpose of the Sunday Platform Fee; (c) disclosing the Platform Fee only at the final step of the checkout process—after consumers have already invested time and effort into completing the transaction—thereby depriving consumers of meaningful price choice (i.e., digital "drip pricing"); (d) imposing a mandatory fee that provides no additional benefit to consumers and is instead designed primarily to increase Sunday's profits.

75. Defendant's conduct was unfair and deceptive in that Defendant used and employed deception, fraud, false promises, and misrepresentations true price consumers would pay when using the Sunday payment platforms to complete their purchases.

76. Defendant's conduct was also unfair and deceptive in that Defendant used and employed concealment, suppression, and omission of material facts regarding the existence, mandatory nature, and amount of the Sunday Platform Fee charged to consumers.

77. Defendant's conduct was unlawful. Defendant's conduct violated Illinois law by representing, expressly and by omission, that consumers would pay only the prices of the items ordered, plus applicable taxes, when using the Sunday platform. In reality, Sunday imposed an additional mandatory Sunday Platform Fee that was not disclosed upfront.

78. Defendant advertised and promoted its app and payment platforms with the intent to induce consumers to complete transactions without disclosing the full and total price, including the mandatory Sunday Platform Fee.

79. Defendant's representations and omissions created a likelihood of confusion and misunderstanding among consumers regarding the true cost of using the Sunday platform to pay for their purchases.

80. Defendant's misrepresentations were material because they were likely to deceive reasonable consumers about the true price of their purchases, inducing them to complete transactions through the Sunday platform and pay more than they reasonably expected. These misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.

81. Defendant intended to mislead Plaintiff Shafer and the other Illinois Subclass members and induced them to rely on its misrepresentations and omissions regarding the true costs of using Sunday.

82. Had Plaintiff Shafer and the other Illinois Subclass members known the truth about the mandatory Sunday Platform Fee, Defendant's offer terms, they would not have used the Sunday platform to complete their purchases or, at a minimum, would have paid less.

83. As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff Shafer and the other Illinois Subclass members suffered injuries in the form of monetary losses when they were charged undisclosed and improperly imposed Sunday Platform Fee.

84. The full amount of losses has not yet been ascertained, but which are believed to exceed the hundreds of thousands, or possibly millions, of dollars in the aggregate. These amounts have been paid to Defendant by Plaintiff Shafer and the Illinois Subclasses and should be restored to them.

85. Defendant knew or should have known that its misrepresentations and omissions would deceive Plaintiff Shafer and the Illinois Subclasses. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were willful, intention, and/or done with reckless indifference with respect to the rights of Plaintiff Shafer and the Illinois Subclasses.

86. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff Shafer and the Illinois Subclasses and will continue to both damage Plaintiff Shafer and the Illinois Subclasses and deceive the public unless enjoined by this Court.

87. Plaintiff Shafer and the Illinois Subclasses seek relief under the Illinois Consumer Protection and Deceptive Business Practices Act, including (but not limited to) actual damages, compensatory damages, statutory damages, restitution, penalties, injunctive relief, punitive damages, and/or attorney's fees and costs.

**COUNT II**
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of Plaintiff Hoke and the California Subclass)**

88. Plaintiff Hoke repeats, realleges, and incorporates the allegations in Paragraphs 1-66 as if fully set forth herein.

89. Defendant's conduct described herein violates the Unfair Competition Law

("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

90. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

91. The UCL imposes strict liability. Plaintiff Hoke need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

92. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

93. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

94. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

95. Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly misrepresenting the presence and nature of its Sunday Platform Fee.

96. Defendant's acts and practices offend an established public policy of truthful advertising and fee disclosure in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

97. The harm to Plaintiff Hoke and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

98. Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal

Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

99. Defendant's business practices have misled Plaintiff Hoke and the proposed Class and, unless enjoined, will continue to mislead them in the future.

100. Plaintiff Hoke relied on Defendant's misrepresentations in making his purchase.

101. By failing to disclose the mandatory Sunday Platform Fee and misrepresenting the total price of purchases through its app and payment platforms, Defendant deceived Plaintiff Hoke and Class members into completing transactions they otherwise would not have made or paying more than they reasonably expected.

102. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff Hoke and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff Hoke and Class members that they will be deceived. Plaintiff Hoke desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

103. As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff Hoke and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

104. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff Hoke and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

105. Plaintiff Hoke has no adequate remedy at law in part because Defendant continues to add the Sunday Platform Fee to all transactions made using its platform. Plaintiff Hoke therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

## COUNT III
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff Hoke and the California Subclass)**

106. Plaintiff Hoke repeats, realleges, and incorporates the allegations in Paragraphs 1-66 as if fully set forth herein.

107. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

108. Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

109. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

110. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff Hoke and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

111. Further, Plaintiff Hoke requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

112. Additionally, Plaintiff Hoke and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**COUNT IV**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff Hoke and the California Subclass)**

113. Plaintiff Hoke repeats, realleges, and incorporates the allegations in Paragraphs 1-66 as if fully set forth herein.

114. This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*. Plaintiff Hoke and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's payment services offered to consumers in exchange for payment are "transactions" within the meaning of California Civil Code § 1761(e). The Sunday platform constitutes "services" within the meaning of California Civil Code § 1761(b).

115. Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff Hoke and the Class which were intended to result in, and did result in, the sale of services:

a. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

b. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

c. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14); and

d. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

116. Specifically, Sunday's fee practices are deceptive because Sunday fails to clearly and conspicuously disclose, before consumers proceed through the payment flow, that Sunday will impose a separate mandatory "Sunday Platform Fee," and instead reveals the fee only at the end of the payment process after the consumer has already invested time and effort to complete the

transaction.

117. At no time does Defendant disclose the true nature of its Sunday Platform Fee; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

118. Sunday's conduct is also deceptive and unlawful because the Sunday Platform Fee is not optional, is not tied to any consumer-selected add-on service, does not provide any additional value to consumers, and is assessed solely because the consumer pays through Sunday.

119. Sunday's omissions and representations were material because a reasonable consumer would consider it important that Sunday imposes a mandatory Platform Fee that increases the total cost of the transaction.

120. Plaintiff and members of the California Class reasonably relied on Sunday's representations, omissions, and deceptive payment flow in proceeding with transactions through Sunday.

121. Plaintiff and members of the California Class suffered injury in fact and actual damages as a direct and proximate result of Sunday's unfair and deceptive practices, including but not limited to payment of the Sunday Platform Fee.

122. Pursuant to § 1782(a) of the CLRA, Plaintiff Hoke's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff Hoke's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff Hoke will move to amend his Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant. As to this cause of action, at this time, Plaintiff Hoke seeks only injunctive relief.

**COUNT V**
**Violation of Georgia Fair Business Practices Act**

**(Ga. Code Ann. § 10-1-390, et seq.)**
**(On Behalf of Plaintiffs and the Nationwide Class)**

123. Plaintiffs repeat, reallege, and incorporate the allegations in Paragraphs 1-66 as if fully set forth herein.

124. This cause of action is brought on behalf of the Nationwide Class.

125. The Georgia Fair Business Practices Act ("GFBPA") declares that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" are unlawful. Ga. Code Ann. § 10-1-393(a).

126. In the course of its business, Defendant, through its agents and/or employees, engaged in the same deceptive and unfair practices nationwide, thereby violating the GFBPA.

127. Defendant affirmatively misrepresented the total price of purchases completed through the Sunday platform, including the mandatory Sunday Platform Fee, a material fact that was completely omitted. In so doing, and by marketing, offering for sale, and facilitating transactions through its app, Defendant engaged in one or more unfair or deceptive acts or practices as defined in Ga. Code Ann. § 10-1-393(b):

1) "[r]epresenting that goods or services have . . . characteristics, uses, benefits, or quantities that they do not have;" and
2) "[a]dvertising goods or services with intent not to sell them as advertised."

128. Defendant's concealment and misrepresentation of the existence, mandatory nature, and amount of the Sunday Platform Fee was material to Plaintiffs and the other Nationwide Class Members, as Defendant intended. Had they known the truth, Plaintiffs and the other Class Members would not have used the Sunday platform to complete their transactions or would have paid significantly less.

129. Plaintiffs and the other members of the Nationwide Class had no reasonable way of discerning that Defendant's representations were false or misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose.

130. Defendant had an ongoing duty to Plaintiffs and the other members of the Nationwide Class to refrain from unfair and deceptive practices under the GFBPA. Specifically, Defendant owed a duty to disclose all material facts concerning the mandatory Sunday Platform Fee because Defendant possessed exclusive knowledge, intentionally concealed the Fee from Plaintiffs and the Class, and/or made misrepresentations that were rendered misleading by withholding these facts.

131. Plaintiffs and the other members of the Nationwide Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information regarding the Sunday Platform Fee.

132. Defendant's violations present a continuing risk to Plaintiffs and the other members of the Nationwide Class, as well as to the general public. Defendant's unlawful acts and practices affect the public interest.

133. Pursuant to Ga. Code Ann. § 10-1-399, Plaintiffs and the other members of the Nationwide Class seek an order: 1) enjoining Defendant's unfair and/or deceptive acts or practices; 2) awarding general and punitive damages in an amount to be proven at trial; 3) awarding costs and attorneys' fees; and 4) awarding any other just and proper relief available under the GFBPA.

134. Plaintiffs sent notice to Defendant complying with Ga. Code Ann. § 10-1-399(b). Because Defendant failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seeks all damages and relief to which Plaintiffs and the Class are entitled.

**COUNT VI**
**BREACH OF CONTRACT**
**(On behalf of Plaintiffs and the Nationwide Class)**

135. Plaintiffs reallege and incorporate herein the allegations of the paragraphs 1 through 66 above as if fully set forth herein.

136. Plaintiffs and Sunday have contracted for payment services through the Sunday platform, as embodied in the representations made on Sunday's platform.

137. No contract provision authorizes Sunday to be able to impose hidden or undisclosed platform fees on consumers after representing the total cost of their purchases.

138. Sunday breached the terms of its contract with consumers by charging additional, undisclosed amounts through the mandatory Sunday Platform Fee—amounts beyond what was represented as the purchase price for items or orders completed through the Sunday platform.

139. Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

140. Plaintiffs and members of the Class have sustained damages as a result of Defendant's breach of the contract.

**COUNT VII**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiffs and the Nationwide Class)**

141. Plaintiffs reallege and incorporate herein the allegations of the paragraphs 1 through 66 above as if fully set forth herein.

142. This Count is brought solely in the alternative. Plaintiffs acknowledge that the breach of contract claim cannot be tried along with unjust enrichment.

143. To the detriment of Plaintiffs and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

144. Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

145. Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, seek judgment in an amount to be determined at trial as follows:

A. Certifying this action for class treatment, appointing Plaintiffs as Class Representatives, and appointing their counsel as Class Counsel;

B. Awarding Plaintiffs and the Classes actual and/or compensatory damages, treble damages, and punitive damages in an amount to be proven at trial;

C. Ordering payment of all applicable statutory damages;

D. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein and ordering Defendant to engage in a corrective advertising campaign;

E. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and Members of the Classes;

F. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G. Ordering such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs and the Class hereby demand a jury trial on all claims so triable.

Dated: January 20, 2026

*/s/ Andrew J. Shamis*
Andrew J. Shamis (GA. Bar No. 494196)
Edwin E. Elliott
**SHAMIS & GENTILE, P.A.**

14 NE 1st Avenue, Suite 705
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com
edwine@shamisgentile.com

Scott Edelsberg
**EDELSBERG LAW, P.A.**
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Tel: (786) 289-9471
Email: scott@edelsberglaw.com

*Attorneys for Plaintiffs and the Classes*